**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X    Case No.

LOUIS NOWLIN,

**COMPLAINT**

Plaintiff,

-against-    ***PLAINTIFF DEMANDS***
***A TRIAL BY JURY***

MOUNT SINAI HEALTH SYSTEM

Defendant.

------------------------------------------------------------------------X

Plaintiff, LOUIS NOWLIN, by his attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby

complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to **The Americans with Disabilities Act of 1990**, 42 U.S.C.

§ 12101, *et seq.* ("ADA"), the **New York State Human Rights Law**, New York State

Executive Law § 296, *et seq.* ("NYSHRL"), and the **New York City Human Rights Law**,

New York City Administrative Code § 8-107(1), <u>et seq</u>. ("NYCHRL")*,* and seeks damages

to redress the injuries Plaintiff has suffered as a result of being **discriminated, retaliated**

**against and wrongfully terminated** by Defendant solely due to his **disabilities and/or**

**perceived disabilities**.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under <u>42 U.S.C.</u> §12101, *et seq*., and <u>28 U.S.C.</u> §§ 1331

and 1343.

3.    The Court has supplemental jurisdiction over the claims Plaintiff brings under state and

city laws pursuant to <u>28 U.S.C.</u> § 1367.

4.    Venue is proper in this district in that a substantial part of the events or omissions giving

rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5.      Plaintiff filed a Charge of Discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6.      Plaintiff received a Notice of Right to Sue from the EEOC, dated 03/04/2019, concerning the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7.      This Action is being commenced within 90 days of receipt of said Notice of Right to Sue.

## PARTIES

8.      At all times relevant hereto, Plaintiff LOUIS NOWLIN (**hereinafter, "Plaintiff"**) is a resident of the State of New York and was a "person" and an "employee" entitled to protection as defined by the ADA, the NYSHRL, and the NYCHRL.

9.      At all times relevant hereto, Defendant MOUNT SINAI HEALTH SYSTEM, (hereinafter, "MSHS"), is a hospital duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal executive office located at 1111 Amsterdam Avenue, New York, New York 10025.

10.     Defendant MSHS and its staff, repeatedly discriminated and retaliated against Plaintiff.

11.     At all times relevant hereto, Plaintiff was an employee of Defendant MSHS.

12.     At all times relevant, Plaintiff worked at Defendant MSHS'S Department of Neurosurgery, located at 1000 10th Avenue, New York, NY 10016.

## MATERIAL FACTS

13.     On July 14, 2014, Plaintiff commenced his employment as a Physician Assistant in the

Department of Neurosurgery

14. Plaintiff's yearly salary in 2018 was $125,000 annually.

15. Plaintiff's work responsibilities included evaluating and treating patients with brain and spinal disorders, order laboratory and radiographic tests, and formulate and implement treatment plans for hospitalized patients.

16. Plaintiff was a satisfactory employee that performed his duties without any major performance issues.

17. Plaintiff suffers from three disabilities that is actual or perceived under all relevant statutes.

18. Plaintiff suffered and continues to suffer from Speech Fluency Disorder (which disrupted Plaintiff's flow of speech), Generalized Anxiety Disorder (which mentally impaired Plaintiff's ability to concentrate or navigate daily life activities without exaggerated worry), and Attention Deficit Hyperactivity Disorder ("ADHD") (impaired Plaintiff's ability to keep his attention, manage hyperactivity and control impulsive behavior). Each of these conditions substantially impaired a major life activity.

19. Plaintiff sees and continues to seek medical treatment and support for his physical, emotional and mental conditions.

20. Beginning in early of 2018, Plaintiff began to get harassed by multiple staff members because of his disabilities.

21. In January 2018, Dr. Swarup approached Plaintiff and told Plaintiff that because of the way Plaintiff speaks, he should think about doing a different job because his employment with Defendant MSHS may be too difficult for Plaintiff. It is a common discriminatory stereotype that those speech impediments have poor cognitive abilities.

22.     Plaintiff was embarrassed and surprised, but it was confirmation that he was, in fact, being discriminated against because of his disability or perceived disability.

23.     On February 16, 2018, Dr. Rupendra Swarup (hereinafter "Dr. Swarup"), the Director of the Neurosurgery department, informed Plaintiff that he should look for another job fast because Dr. Fedor Panov (hereinafter "Dr. Panov") and Jennifer Savitzky-Fuerstein (hereinafter "Ms. Savitzky-Fuerstein") want him fired.

24.     Dr. Swarup advised Plaintiff not to fight Dr. Panov and Ms. Savitzky-Fuerstein, even though he believed their intention to be unfair to Plaintiff. He explained that Plaintiff would be fired because he wasn't able to communicate effectively.

25.     Plaintiff's speech impediment was not a barrier to being understood by others.

26.     Plaintiff was shocked and confused by Dr. Swarup's revelation.

27.     On March 2, 2018, Dr. Swarup approached Plaintiff again. He asked where Plaintiff was in the job search process and told Plaintiff that he could use him as a reference. This was done in the presence of other staff members, which greatly embarrassed Plaintiff, particularly because staff members began to wish Plaintiff well when he did not want to lose his job.

28.     In March 2018, Plaintiff continued to get messages from his peers expressing their sadness that Plaintiff is leaving and wishing him well. Plaintiff also learned through them that he would eventually be discharged if he didn't resign. This was a sign to Plaintiff that information about him was inappropriately being shared with other employees.

29.     Dr. Swarup also shared with Plaintiff that both Dr. Saadi Ghatan (hereinafter "Dr. Ghatan") and Dr. Panov hated him.

4

30.  Plaintiff began to feel helpless from the hostile work environment he was subjected to.

31.  On April 2, 2018, he reached out to Ann McNicholas (hereinafter "Ms. McNicholas") who is the Senior Manager of Human Resources and Labor Relations at MSHS. Ms. McNicholas declined to meet with plaintiff. She forwarded a Request for Disability Accommodation form to him, without further information or guidance.

32.  On May 8, 2018, Plaintiff's colleague, Sharon Lai, (hereinafter "Ms. Lai") was summoned to a meeting with Dr. Panov during which she was told that Dr. Panov's "job is to get rid of the weakest link and that is Lorenzo." Dr. Panov further indicated that Plaintiff is the weakest link and that Ms. Lai was next. In addition, Ms. Lai shared Defendant MSHS'S tactic to assign one Physician Assistant to the weekend night shifts instead of two. This would orchestrate a scenario for Plaintiff to be overwhelmed with workload and heighten the probability of making mistakes. These mistakes would then be documented and used as a means to build a disciplinary record against Plaintiff, and eventually fire him.

33.  Plaintiff understood these revelations as active plans by Defendant MSHS to terminate his employment because of his disabilities.

34.  Ms. Lai reported Dr. Panov's comment and threat to Dr. Swarup, who asked Ms. Lai if she can tell Plaintiff to find another job.

35.  On or about May 10, 2018, Plaintiff reached out to Ms. McNicholas again. He insisted on a meeting, as he was at his wits end with the harassment, hostility, and pressure from Dr. Panov and Dr. Swarup to resign. Plaintiff met Ms. McNicholas and formally complained about the disability discrimination and bullying he was facing.

36.     Ms. McNicholas again forwarded Plaintiff the form he needed to fill out to request an accommodation.  Ms. McNicholas never involved Employee Health Services ("EHS"), as company policy requires.

37.     EHS plays an essential role in the accommodation request process, as it would give Plaintiff the needed guidance on providing documents to support his request.  EHS would also perform a physical exam to determine if the accommodation being requested is appropriate.

38.     On May 24, 2018, due to the lack of reasonable accommodation, Plaintiff reached out to an attorney whereby a letter was formally sent putting Defendant MSHS on notice of Plaintiff's disabilities and the need for reasonable accommodation.

39.     On June 7, 2018, Plaintiff was called into a meeting with Ms. McNicholas, Dr. Panov, Ms. Savitzky-Fuerstein and Ms. Barbara Soto. There was no representative from the Employee Health Services Department present.

40.     During this meeting, Plaintiff explained his reasonable accommodation request would not pose any undue hardship to Defendant MSHS. Plaintiff understands there might be difficulties in communication due to his Speech Fluency Disorder and provided a solution of communicating better over a messaging application on their cellular phones. This is certainly not unreasonable when Plaintiff already communicates with his colleagues and attendings through a messaging application on the phone. However, Plaintiff's request for reasonable accommodation was denied. Defendants did not counter with any alternatives and therefore failed to engage in the interactive process.

41.   Dr. Panov, against whom Plaintiff had lodged a complaint of discrimination, was present at the meeting at the June 7, 2018 meeting.  Dr. Panov also made the decision to deny Plaintiff's request for an accommodation.

42.   Dr. Panov ended the June 7, meeting with Plaintiff by announcing that a meeting to place Plaintiff on a Performance Improvement Plan ("PIP"), a disciplinary action, would follow.

43.   Plaintiff believed both the denial of his accommodation request and the impeding disciplinary action was solely based on discrimination due to his disabilities, and in retaliation for reporting Dr. Panov's discrimination.

44.   On August 1, 2018, after Plaintiff realized his request for reasonable accommodation was not taken seriously, he contacted the Mount Sinai Hospital Compliance hotline.  Plaintiff explained the discrimination and harassment he had experienced and Human Resource's failure to reasonably respond or investigate the discrimination and the denial of a reasonable accommodation.

45.   Through the MSHS's compliance hotline, Plaintiff's request for an accommodation was denied a second time.

46.   In September 2018, Plaintiff informed his direct supervisor, Frank Fumicaldo, (hereinafter Mr. Fumicaldo") that his certification had expired. Mr. Fumicaldo reassured Plaintiff that he would not get fired because of an expired certification. Plaintiff was taking the necessary steps to renew his certification.

47.   In October 2018, Plaintiff was warned by an administrative staff member, Nathaniel Rodriguez, that an individual by the name of Fabiola (last name unknown) will be hired to become Plaintiff's replacement.

48.     In February 2019, Plaintiff also received more confirmation that Defendant MSHS was looking to discharge him and had already hired a replacement for his position. A Physician Assistant by the name of Fabiola (last name unknown) began working the weekend night shifts with Plaintiff. Fabiola revealed to Plaintiff that she was encouraged to apply for Plaintiff's position because "it would soon become available."

49.     The discrimination Plaintiff experienced at Defendant MSHS took a toll on his health. Plaintiff began experiencing regular panic attacks at work as he worried every day regarding his job stability.

50.     On or about April 2019, there was a mandatory neurosurgery departmental meeting.  In this meeting, Dr. Ghatan reprimanded and humiliated Plaintiff in front of the entire department by speaking of an incident that occurred the previous weekend regarding a patient in Plaintiff's care. Dr. Ghatan went on to suggest in the meeting that Plaintiff had no empathy and failed to follow protocols. That information was false and tried to characterize Plaintiff as incompetent.

51.     On or about early of June 2019, Plaintiff was approved and went on FMLA for three months to deal with his anxiety and depression upon his psychiatrist's strong advisement.

52.     On June 20, 2019, Plaintiff was called into a meeting with Dr. Ghatan. Prior to the meeting, Dr. Ghatan mocked and laughed at Plaintiff and commented loudly, 'Oh I thought you were going to bring your service dog." Plaintiff had previously brought his service dog at a prior meeting with Dr. Ghatan. At the meeting, Dr.Ghatan also mocked Plaintiff's speech disorder. The meeting ended with Dr. Ghatan informing Plaintiff that he could not work until he had gets recertified as a Physician Assistant.

8

53.   This news shocked Plaintiff as certification is not required in his position as a Physician Assistant with Defendants' Neurosurgery Department. All that is required was a Physician Assistant NY State license, which Plaintiff maintains and continues to maintain good standing. This disparate treatment from Dr. Ghatan led his mental health to decline further.

54.   On July 23, 2019, while Plaintiff was on FMLA leave to manage his declined health, he received a letter from Defendant MSHS notifying him that he had been terminated, effective immediately.

55.   Plaintiff believes his termination was not only a result of being discriminated against because of his disabilities, but that it's also retaliatory action taken against him for taking FMLA leave and reporting his discrimination.

56.   Defendant MSHS and its staff, each collectively and individually, condoned, ratified, and supported the discriminatory work environment against Plaintiff.

57.   Defendant MSHS had no legitimate business reason for terminating Plaintiff's employment.

58.   Defendant MSHS termination of Plaintiff's employment was retaliatory.

59.   Defendant  MSHS'S human resources department made no effort to help or provide reasonable accommodation to Plaintiff when he requested it and neither did Defendant MSHS'S compliance department.

60.   As such, Plaintiff had no one else who could investigate the discrimination he was subjected to.

61.   As a direct result of the wrongful and oppressive actions of Defendant MSHS'S and its staff, Plaintiff was subjected to unlawful discrimination, humiliated and he experienced a

hostile work environment causing him embarrassment, discriminatory ridicule, and hostility.

62. As a result of the Defendant MSHS'S actions, Plaintiff was unlawfully treated, humiliated, degraded, victimized, embarrassed, and emotionally distressed.

63. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary/pay, special damages, loss of employment, loss of employment opportunities, loss to benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

64. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

65. Defendant MSHS'S conduct was malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against Defendant.

## AS A *FIRST* CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. Plaintiff asserts that Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended.

68. The ADA prohibits discrimination against any qualified individual on the basis of disability, the perception that he is disabled, or a record of impairment.

69. Additionally, the ADA requires a covered entity to make reasonable accommodations to

the known physical or mental limitations of an otherwise qualified individual with a disability.

70. As described above, Defendant and its staff discriminated against Plaintiff in violation of the ADA by failing to accommodate his disabilities.

71. Plaintiff had, and/or Defendant perceived that he had, a physical or mental impairment that substantially limits one or more of his major life activities.

72. As a result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, worsened anxiety, humiliation, embarrassment, stress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

73. As such, Plaintiff has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

**AS A *SECOND* CAUSE OF ACTION FOR *RETALIATION*
UNDER THE AMERICANS WITH DISABILITIES ACT**

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75. The ADA prohibits retaliation, interference, coercion, or intimidation.

76. 42 U.S.C. § 12203 provides:

    i.    Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

    ii.    Interference, coercion, or intimidation. It shall be unlawful to coerce,

> intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

77. Defendant engaged in an unlawful discriminatory practice by retaliating against Plaintiff because of his disability and for engaging in protected activity by requesting a reasonable accommodation.

78. Defendant knew or should have known of their obligations to accommodate Plaintiff under the ADA.

79. But for Plaintiff's disabilities and multiple requests for reasonable accommodations, Defendant would not have terminated his employment.

80. Defendant had no good-faith business justification to terminate Plaintiff.

81. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment and other compensation which such employment entails, and Plaintiff  has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

82. As such, Plaintiff is entitled to the maximum amount allowed under this law.

## AS A *THIRD* CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. <u>New York State Executive Law</u> § 296 provides that, "1. It shall be an unlawful

12

discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, *disability*, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

85.   Plaintiff was subjected to discrimination that was solely on the basis of his disabilities.

86.   As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer emotional distress, special damages, inconvenience, loss of increase in income, benefits and other compensation which such employment entails, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering, and other non-pecuniary losses.

## AS A *FOURTH* CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK STATE LAW

87.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88.   Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

89.   Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his opposition to the unlawful employment practices of the Defendant.

## AS A *FIFTH* CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

90.  Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91.  The Administrative Code of City of NY § 8-107 [1] provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

92.  Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of his disabilities.

## AS A *SIXTH* CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

93.  Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

94.  The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person **has opposed any practices** forbidden under this chapter. . ."

95.  Defendant violated the section cited herein as set forth.

## PUNITIVE DAMAGES

96.  Plaintiff is entitled to the maximum amount allowed under this statute/law.

97.  Defendant's conduct was malicious, willful, outrageous, and conducted with full

14

knowledge of the law.

98.   As such, punitive damages are appropriate as a result of Defendant's above-described conduct and Plaintiff demands Punitive Damages as against Defendant.

## **JURY DEMAND**

99.   Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.   Declaring that Defendant engaged in unlawful employment practices prohibited by the Americans with Disabilities Act , the New York State Human Rights Law, and the New York City Human Rights Law, in that Defendant discriminated against Plaintiff on the basis of his disability, perceived disability and need for reasonable accommodation;

B.   Awarding damages to Plaintiff resulting from Defendant's unlawful practices, and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law and City-law claims;

D.   Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E.   Awarding Plaintiff punitive damages;

F.   Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

15

Dated:  New York, New York
       March 13, 2020

                                **PHILLIPS & ASSOCIATES,**
                                **ATTORNEYS AT LAW, PLLC**

By:    /s/ Marjorie Mesidor
          Marjorie Mesidor, Esq.
          Irene Chan, Esq.
          *Attorneys for Plaintiff*
          **Phillips & Associates, PLLC**
          45 Broadway, Suite 620
          New York, New York 10006
          T: (212) 248-7431
          F: (212) 901-2107
          mmesidor@tpglaws.com
          ichan@tpglaws.com

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
New York Status Line: (866) 408-8075
New York Direct Dial: (212) 336-3630
TTY (212) 336-3622
FAX (212) 336-3625

February 28, 2020

Re: Nowlin v. Mount Sinai Health System
Charge # 520-2020-05256

RECEIVED
MAR 04 2020
BY: _____

Marjorie Mesidor, Esq.
PHILLIPS & ASSOCIATES, PLLC
Attorneys at Law
45 Broadway, Suite 620
New York, NY 10006

Dear Ms. Mesidor,

Enclosed please find the Right to Sue Notice you requested via an email dated February 26, 2020. If you wish to file suit in this matter, you must do so within 90 days of your receipt of this notice.

If you have any questions, feel free to contact me at (929) 506-5307.

Sincerely,

Debra L. Richards for
Judy A. Keenan,
District Director

Enc.

cc: Louis L. Nowlin
245 East 124th Street, Apt 4C
New York, NY 10035

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Louis L. Nowlin**<br>**245 East 124th Street, Apt 4C**<br>**New York, NY 10035** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

| | |
|---|---|
| [ ] | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2019-05256** | **Debra L. Richards,**<br>**Investigator** | **(929) 506-5307** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Judy A. Keenan* (signature)

**Judy A. Keenan,**
**Deputy Director**

02/28/2020

*(Date Mailed)*

Enclosures(s)

RECEIVED
MAR 0 4 2020
BY:

cc:

Attn: Office of the General Counsel
MOUNT SINAI MEDICAL CENTER
One Gustave L. Levy Place,
Box 1097
New York, NY 10028

Marjorie Mesidor, Esq.
PHILLIPS & ASSOCIATES, PLLC
Attorneys at Law
45 Broadway, Suite 620
New York, NY 10006

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --**  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS  --  Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION  --  Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE  --  All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



Enclosures(s)

cc:

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.