**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
LOUIS NOWLIN,

                     Plaintiff,

          -against-                              Case No.: 20-cv-2470

MOUNT SINAI HEALTH SYSTEM,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Dated: Garden City, New York
       August 9, 2021

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**
Joshua Friedman, Esq.
Joseph Myers, Esq.
*Attorneys for Plaintiff*
585 Stewart Avenue, Suite 410
Garden City, New York 11530
(212) 248-7431

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................... 1

STANDARD OF REVIEW ................................................................................................................. 6

ARGUMENT ...................................................................................................................................... 7

   I.    FAILURE TO ACCOMMODATE ............................................................................................ 7

   II.   DISCRIMINATORY TERMINATION ................................................................................... 10

      A.  Prima Facie Case ........................................................................................................... 11

      B.  Pretext ............................................................................................................................ 13

   III.  DISCRIMINATION – HOSTILE WORK ENVIRONMENT ................................................. 15

      A.  ADA and NYSHRL ....................................................................................................... 15

      B.  NYCHRL ...................................................................................................................... 17

   IV.  RETALIATION ....................................................................................................................... 18

      A.  PIP .................................................................................................................................. 19

      B.  Termination .................................................................................................................... 20

CONCLUSION ................................................................................................................................. 22

## **TABLE OF AUTHORITIES**

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ............................................ 10

*Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) ........................................................................ 14

*Baez v. Anne Fontaine USA, Inc.*, 2017 WL 57858, 2017 U.S. Dist. LEXIS 1630 (S.D.N.Y. Jan. 5, 2017) ................................................................................................................................ 18

*Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131 (2d Cir. 1995) ................................................ 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 6

*Clarke v. N.Y. City Dep't of Educ.*, No. 18-cv-1850, 2020 WL 6047426, 2020 U.S. Dist. LEXIS 189482 (E.D.N.Y. Oct. 13, 2020) .......................................................................................... 17

*Davis v. New York City Dep't of Educ.*, 804 F.3d 231 (2d Cir. 2015) ....................................... 9, 10

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) .......................................................................... 21

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004) .................................................................... 16

*Forrester v. Corizon Health, Inc.*, 752 Fed. Appx. 64 (2d Cir. 2018) (Summary Order) ........... 18

*Geras v. Hempstead Union Free Sch. Dist.*, 149 F. Supp. 3d 300 (E.D.N.Y. 2015) ................... 21

*Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509 (S.D.N.Y. 2015) .............................................. 19

*Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545 (2d Cir. 2001) ................................. 20

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) ............................................... 19

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) ........................................................... 12

*Graziadio v. Culinary Inst. of America*, 817 F.3d 415 (2d Cir. 2016) ........................................ 18

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) ........................................................................ 15

*Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134 (2d Cir. 2010) ...................................................... 11

*Hernandez v. Kaisman*, 103 A.D.3d 106 (1st Dep't 2012) .......................................................... 17

*Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008) ..................................................................... 6

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010) ........................................................... 16

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149 (2d Cir. 1998) ................................................................. 12

*Knight v. U.S. Fire Ins. Co.* 804 F. 2d 9 (2d Cir. 1986) ................................................................. 6

*Kwan v. Andalex Grp., LLC*, 737 F.3d 834 (2d Cir. 2013) .................................................... 10, 18

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92 (2d Cir. 2009) ............................... 7, 10

*McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2013) ......................................................... 7

*Mhany Mgmt. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016) ................................................ 6

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013) ................ 17, 18

*Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019) ........................................ 10

*Noel v. Interpublic Group of Co's*, No. 12-cv-2996, 2013 WL 1955879, 2013 U.S. Dist. LEXIS 68067 (S.D.N.Y. May 13, 2013) ................................................................ 13

*Norville v. State Island Univ. Hosp.*, 196 F.3d 89 (2d Cir. 1999) ................................ 9

*Rasmy v. Marriott Int'l Inc.*, 952 F.3d 379 (2d Cir. 2020) .......................................... 15

*Redd v. N.Y. State Div. of Parole*, 678 F.3d 166 (2d Cir. 2012) .................................... 16

*Rose v. N.Y. City Bd. of Educ.*, 257 F.3d 156 (2d Cir. 2001) ...................................... 12

*Schneider v. Wal-Mart Stores, Inc.*, No. 16-cv-2010, 2019 WL 294309, 2019 U.S. Dist. LEXIS 10903 (S.D.N.Y. Jan. 23, 2019) ............................................................. 11

*Shannon v. Credit Agricole Secs. (USA), Inc.*, No. 17-cv-667, 2021 WL 1063183, 2021 U.S. Dist. LEXIS 52329 (S.D.N.Y. Mar. 19, 2021) .................................................. 11

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) ...................................................... 15

*Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997) ........................................................ 15

*Vernon v. Port Auth.*, 154 F. Supp. 2d 844 (S.D.N.Y. 2001) ...................................... 13

*Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224 (2d Cir. 2000) ............................ 18

*Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59 (2d Cir. 2015) ................................ 10

## PRELIMINARY STATEMENT

Plaintiff, Louis Nowlin, ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendant Mount Sinai Health System's ("Defendant") motion for summary judgment dismissing Plaintiff's Complaint, which alleges claims of failure to accommodate, discriminatory termination, hostile work environment and retaliation under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

As is unfortunately typical, Defendant bases its motion on testimony provided by its own witnesses, ignoring the facts of the case as related by Plaintiff.  When viewed in the proper light, the "record" shows that Defendant harassed Plaintiff for years, refused to accommodate his disability despite the ease with which it could, explicitly retaliated against Plaintiff when he complained of Defendant's discrimination and terminated him for failing to maintain a certification that was not an actual requirement of his job.

## STATEMENT OF FACTS

Plaintiff began working for Defendant in July 2014 as a Physician's Assistant ("PA") in Defendant's Department of Neurosurgery.  (56.1 ¶ 1).  Plaintiff suffers from a disability known as cluttering, which impedes Plaintiff's ability to speak and causes him to jumble words together while speaking faster than normal.  (Pl. Dep. 86:2-15).

In January 2017, Plaintiff's NCCPA certification, which is not a requirement to practice as a PA or to work as a PA for Defendant, expired.  (Pl. Dep. 28:2-4; 166:13-17; Ex. D).  The next month, February 2017, Plaintiff advised his direct manager, Frank Fiumecaldo ("Fiumecaldo"), that his certification lapsed.  (Pl. Dep. 166:18-167:16).  Fiumecaldo did not consider the matter of significance, telling Plaintiff that Defendant could not fire him for an expired certification.  (Pl. Dep. 167:20-24).  Plaintiff also advised Dr. Rupendra Swarup ("Dr. Swarup"), his next-level

1

manager, verbally in March 2017 and Defendant's Credentialing Department, via email in August 2017, of his certification status.  (Pl. Dep. 167:10-168:24).  Following these disclosures, Plaintiff continued to work for Defendant for more than two years without any issues pertaining to his certification.

In January 2018, Dr. Swarup said to Plaintiff that he should perform a lower-level job, suggesting that Plaintiff did not have the ability to perform the position he then occupied.  (Pl. Dep. 39:20-41:21).  Dr. Swarup further told Plaintiff that Defendant was going to fire Plaintiff because his speech was an issue and Plaintiff should quit before that happened.  (Pl. Dep. 40:13-41:1).  Plaintiff asked Dr. Swarup if the problem with his speech was his speech impediment and Dr. Swarup responded "yes."  (Pl. Dep. 68:18-25).  In or around the end of January 2018, Dr. Swarup told Plaintiff that Dr. Fedor Panov ("Dr. Panov") and Dr. Saadi Ghatan ("Dr. Ghatan"), the department chair, were the persons who wanted to fire him and, moreover, that they hated Plaintiff.  (Pl. Dep. 43:12-44:7; 54:16-23).  In response to Plaintiff's question, Dr. Swarup disclosed that the reason for Plaintiff's potential termination was his speech.  (Pl. Dep. 44:4-10).

Thereafter, Dr. Swarup continued to press Plaintiff on a weekly basis until late May 2018 about whether he had located another job.  (Pl. Dep. 44:21-24).  This information evidently having spread throughout the department, many of Plaintiff's co-workers approached Plaintiff to tell him they were sorry he was getting forced out and there were sad to see him leave, which continued up until the time of Plaintiff's eventual termination.  (Pl. Dep. 48:8-50:11; 53:9-54:10).  One such person was Nathaniel Rodriguez, Administrator, who, like Dr. Swarup, informed Plaintiff that Dr. Panov and Dr. Ghatan hated him.  (Pl. Dep. 50:7-24).  Sharon Lai, another PA, also disclosed to Plaintiff that Dr. Panov said his job was to get rid of Plaintiff.  (Pl. Dep. 51:20-52:6).

On April 2, 2018, Plaintiff contacted Ann McNicholas ("McNicholas"), Human Resources

Manager, to complain about the discrimination he was facing.  (Ex. E).  Plaintiff spoke with McNicholas over the phone and additionally inquired about the possibility of a reasonable accommodation.  (Pl. Dep. 57:2-17).  Approximately one month later, on May 10, 2018, Plaintiff met with McNicholas and spoke to her both about discrimination on the basis of his disability and the reasons for his accommodation request.  (Pl. Dep. 55:12-56:15; 65:3-66:3; Ex. F).  Less than two weeks later, on May 22, 2018, Plaintiff emailed McNicholas his accommodation request, which summarized a plan he had conceived with his speech therapist and was previously provided to McNicholas.  (Pl. Dep. 66:4-25; Ex. G).  Two days later, May 24, 2018, an attorney, acting on Plaintiff's behalf, sent McNicholas a letter reiterating Plaintiff's complaints about discrimination and his request for accommodation.  (Ex. H).  Included therewith was a Fluency Evaluation performed by Plaintiff's speech therapist, providing an overview of his condition and a recommendation for accommodation.  (*Id.*).

Following Plaintiff's complaints, instead of investigating the Complaints McNicholas instead started to look into Plaintiff's performance even though she did not supervise Plaintiff and did not work in his department.  (McNicholas Dep. 116:6-17; 184:5-185:6).  McNicholas did this on her own accord, without being prompted to by Plaintiff's management regarding any alleged performance concerns.  *Id*.  Seizing on a performance review completed more than six months prior in October 2017 (that failed to mention or even recommend a Performance Improvement Plan), McNicholas directed Plaintiff's department to place him on a Performance Improvement Plan ("PIP") despite the fact that the review scored Plaintiff as a "Strong Contributor" and McNicholas' role on PIPs was limited to providing feedback on drafts.  (McNicholas Dep. 17:17-18:17; 181:7-11; Exs. I and J).

On June 7, 2018, Plaintiff met with McNicholas, Dr. Panov and two other managers.  (56.1

3

¶ 48).  McNicholas advised Plaintiff that the purpose of the meeting was to discuss Plaintiff's accommodation request.  (Pl. Dep. 98:8-12).  Plaintiff then started to explain the specifics of his request, which was a hybrid of verbal and textual communication where he would continue to communicate verbally in emergency situations.  (Pl. Dep. 74:6-75:6).  Significantly, this was already the process in place and Plaintiff was merely attempting to formalize what was already being done within his department by himself and other staff.  (Pl. Dep. 75:8-17).  However, before Plaintiff could explain, Dr. Panov abruptly ended the meeting, within the first two minutes, by denying Plaintiff's accommodation request.  (Pl. Dep. 98:16-20).  Then, as he was leaving, Dr. Panov asked McNicholas if the next meeting would be disciplinary, to which she responded in the affirmative.  (Pl. Dep. 98:21-24).

On June 15, 2018, Plaintiff made another complaint of discrimination, which included complaining about the denial of his accommodation request at the June 7 meeting, to Salvatore LaVecchia, Vice President of Labor Relations.  (Ex. K).  Around the same time, seeing as his complaints were ineffective, Plaintiff was exploring the possibility of a transfer to remove himself from the hostile environment.  (Pl. Dep. 106:13-18).  On June 20, 2018, McNicholas sent Plaintiff a list of open PA positions in other departments.  (56.1 ¶ 52).  However, the positions were junior to Plaintiff's position and would not address his need for accommodation.  (Pl. Dep. 107:4-19).  On July 4, 2018, growing increasingly concerned about his job and Defendant's failure to address his complaints, Plaintiff complained yet again to McNicholas about discrimination and the denial of his accommodation request.  (Ex. L).

Just over one week later, on July 12, 2018, Defendant issued Plaintiff a PIP.  (Ex. M).  The PIP was, by its very terms, disciplinary and read as follows:

> Effective immediately you are placed on a **60** day PIP.  During this time you will
> be expected to make regular progress on the plan outlined above.  Failure to meet

or exceed these expectations, or any display of gross misconduct will result in further disciplinary action, up to and including termination. In addition, if there is no significant improvement to indicate that the expectations and goals will be met within the timeline indicated in this PIP, your employment may be terminated prior to **60** days. Furthermore, failure to maintain performance expectations after the completion of the PIP may result in additional disciplinary action up to and including termination.

(*Id.*). Scared off by the serious disciplinary action of the PIP and its evident retaliatory nature, Plaintiff was dissuaded from further pressing for his rights with respect to his denied request for accommodation. (Pl. Dep. 139:2-22). However, Plaintiff still attempted to obtain some form of redress to his complaints so he made a complaint to Defendant's Corporate Compliance department. (Ex. N). Nonetheless, this complaint was ineffective and merely resulted in a letter from McNicholas. (Ex. O). While the letter purported to revive discussion of Plaintiff's accommodation, McNicholas only stated that Plaintiff's accommodation "could possibly be granted in a different position," placing the onus on Plaintiff to transfer simply to find out whether his accommodation request would even be considered by Defendants. (*Id.*). On August 24, 2018, Plaintiff met one more time with McNicholas to voice his complaints, but once again Defendant took no action. (Ex. P).

Thereafter, Defendant further undermined Plaintiff's employment. Plaintiff was advised by Nathaniel Rodriguez that a woman named Fabiola was hired as his replacement. (Pl. Dep. 175:24-176:9). Once Fabiola started, working the same shift as Plaintiff, she also confirmed that she was Plaintiff's replacement. (Pl. Dep. 176:21-177:7). Following Fabiola's hire, Dr. Ghatan held a departmental meeting wherein he falsely blamed Plaintiff for an issue with a patient and, in obvious reference to Plaintiff, made constant, repeated, comments about the need for clear communication. (Pl. Dep. 179:9-181:23).

On June 18, 2019, Plaintiff was summoned to a meeting with Dr. Ghatan, Fiumecaldo and

Leslie Schlachter ("Schlachter") about his NCCPA certification, which had expired nearly two and a half years earlier.  (56.1 ¶ 84; Pl. Dep. 192:5-10).  As Plaintiff was entering the meeting, Dr. Ghatan, in the hallway, said loudly, for all present to hear, that he thought Plaintiff was bringing his service dog and then started laughing.  (Pl. Dep. 193:2-25).  During the meeting, Dr. Ghatan mocked Plaintiff's disability, as he had earlier, by disparaging Plaintiff's ability to communicate.  (Pl. Dep. 194:23-195:7).  Ultimately, Plaintiff was told that he could no longer work until his certification was renewed and he was given just two weeks to pass the re-certification test.  (Pl. Dep. 191:20-23).

At this time, Plaintiff was suffering from a serious medical condition, which precluded him from taking the test and necessitated his application for FMLA leave.  (Pl. Dep. 198:9-23).  Plaintiff attempted to contact Schlachter to advise her about the situation but was only able to reach her secretary and asked for Schlachter to call him back, but she did not.  (Pl. Dep. 198:24-200:3).  Plaintiff also called a second time to again ask for Schlachter to call him back, which she never did.  (Pl. Dep. 200:4-14).  Without any other communication from Defendant, Plaintiff received a letter from Dr. Ghatan, dated July 17, 2019, terminating his employment.  (Ex. Q).

## STANDARD OF REVIEW

In determining whether summary judgment is appropriate, the moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any factual issues that arise, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *Mhany Mgmt. v. County of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016).  Quite notably, the nonmoving party need not prove their case dispositively at the summary judgment stage, in order to defeat such a motion.  Rather, the non-movant need only demonstrate that there are material

factual issues in existence, such that a reasonable fact finder could resolve the issues in favor of the nonmoving party. *Knight v. U.S. Fire Ins. Co.* 804 F. 2d 9, 11 (2d Cir. 1986). This is particularly true in discrimination cases, where the merits typically turn upon an employer's intent, necessitating abundant caution in granting summary judgment for the employer. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

## ARGUMENT

### I.   FAILURE TO ACCOMMODATE

"A plaintiff states a <u>prima facie</u> failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability within the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013).

Defendant's only attempt to challenge Plaintiff's case is to argue that the accommodation requested by Plaintiff was unreasonable. Plaintiff's burden to establish reasonableness is extremely slim. Plaintiff need only satisfy a burden of production by putting forth "the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). Plaintiff has undoubtedly satisfied his burden. Crucially, the accommodation sought by Plaintiff was little more than a formalization of his normal course of performance over the three prior years he was working for Defendant. (Pl. Dep. 75:8-17). Given that fact, it certainly cannot be said that Plaintiff's requested accommodation was facially unconscionable.

Having satisfied the burden of production, it then falls on Defendant, which retained the burden of persuasion, to show that the accommodation at issue represented an undue burden. *Id.*; *see also McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 n. 3 (2d Cir. 2009). Again, Plaintiff's actual performance eviscerates any attempt by Defendant to meet its burden. As discussed above, Plaintiff's proposed accommodation, a hybrid of telephonic and textual communication, was virtually identical to his then current practice and not dissimilar from his practice throughout the remainder of his employment. (Pl. Dep. 75:8-17; Ghatan Dep. 36:15-22). Indeed, even Dr. Ghatan admitted there was no issue with the form of Plaintiff's communication. (Ghatan Dep. 36:23-37:3). Thus, it is simply impossible to find that a practice, ongoing for years before and after the request, somehow suddenly presented an undue burden on Defendant.

Moreover, Defendant's attempts to paint Plaintiff's request as a threat to patient safety in emergency situations are based on a total refusal to allow Plaintiff to explain the contours of his request and thereby engage in the interactive process at the heart of the ADA. Following Plaintiff's submission of a written request for accommodation, Defendant held a meeting with Plaintiff to deny his request. (Pl. Dep. 98:8-12). In this meeting, Plaintiff was provided no time to explain or otherwise discuss his request, which still allowed for verbal communication in emergencies. (Pl. Dep. 74:6-75:6). Indeed, the meeting was ended within two minutes with a terse denial of Plaintiff's request and was followed shortly thereafter by Defendant's issuance of a PIP to Plaintiff thereby discouraging further discussions of his accommodation request. (Pl. Dep. 98:16-20; 139:2-22). Therefore, not only does Defendant's undue burden argument falter on Plaintiff's actual performance, but it also fails based on Defendant's conscious refusal to permit Plaintiff to explain the actual terms of his request.

Defendant next argues that Plaintiff's failure to accommodate claim should be dismissed because Plaintiff was offered an alternative accommodation, namely a transfer to another position. Defendant claims that the positions to which it offered Plaintiff a potential transfer paid the same or more than Plaintiff's then current position. However, the evidence submitted by Defendant does not state as such. Rather, Defendant merely submits a declaration from a Compensation Analyst with Defendant, opining, more than four years later, about the *present* pay scale for the transfer positions' departments. (Hernandez Decl. ¶¶ 4-6). There is no evidence as to the actual compensation of the positions themselves at the time Plaintiff sought an accommodation. Moreover, as Plaintiff testified, the positions presented to him were far more junior in status, akin to a job for recent graduates, not for someone like Plaintiff, who had many years of post-graduate experience. (Pl. Dep. 107:4-7). Accordingly, Defendant's potential transfer of Plaintiff was not a reasonable accommodation. *See Norville v. State Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999) (noting that reassignment, as a reasonable accommodation, should result in an equivalent position in terms of status).

In any event, in order for an alternative accommodation to bar a failure to accommodate claim the proffered accommodation "must be effective" and unless "plainly reasonable," "[t]he reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by the factfinder." *Noll v. IBM*, 787 F.3d 89, 94-95 (2d Cir. 2015). Here, nothing suggests that a potential transfer would have effectively accommodated Plaintiff. In other words, this presents an issue of fact for a jury to decide. When McNicholas first discussed a transfer with Plaintiff, she gave no indication that the transfer would in any way address Plaintiff's need for an accommodation. (Pl. Dep. 106:19-22). Only after Plaintiff complained about Defendant's failure to accommodate him did McNicholas associate the transfer with accommodation. However,

9

McNicholas simply said that Plaintiff's requested accommodation "could possibly be granted in a different position," thereby giving Plaintiff no indication that a transfer would accomplish anything. (Pl. Dep. 107:7-12; Ex. O). At best for Defendant, there is a question of fact for a jury to decide as to whether this so-called alternative accommodation would have been effective. Accordingly, Defendant's motion should be denied.

## II.   DISCRIMINATORY TERMINATION

Disability discrimination claims under the ADA and NYSHRL are governed by the familiar *McDonnell Douglas* analysis. *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). Plaintiff first demonstrates a *prima facie* case by showing: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action . . . took place under circumstances giving rise to an inference of discrimination." *Id.* (internal quotations omitted). Plaintiff's burden to demonstrate the *prima facie* case is minimal. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001).

The burden then shifts to Defendant "to articulate a non-discriminatory reason for the adverse employment action." *Davis*, 804 F.3d at 235. If Defendant does so, the burden shifts back to Plaintiff to show that the proffered reason is pretext for discrimination. *McBride*, 583 F.3d at 96. Although "but-for" causation applies to ADA discrimination claims, *Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019), "'but-for' causation does not require proof that [discrimination] was the only cause of [Defendant's] actions, but only that the adverse action would not have occurred in the absence of the [discriminatory] motive." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Under the NYCHRL, Plaintiff's burden is significantly less onerous and summary judgment is only appropriate "if the record establishes as a matter of law that discrimination . . . played *no* role in the defendant's actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (internal quotations omitted).

Before addressing Defendant's contentions, it is important to note that Defendant repeatedly, throughout Point II of its brief, characterizes "the record" as containing no evidence to support Plaintiff's allegations by citing exclusively to the testimony of its own witnesses and ignoring Plaintiff's testimony.  Obviously, on a motion for summary judgment, where the facts are viewed in the light most favorable to the non-movant, this is improper.  When taking into account Plaintiff's testimony, it is clear that there is no basis for summary judgment on Plaintiff's disability discrimination claim.

### A.      Prima Facie Case

Defendant's only challenge to Plaintiff's *prima facie* case is the final element, an inference of discrimination.  It is well-established that discriminatory comments can satisfy Plaintiff's burden to meet this element.  *See e.g. Shannon v. Credit Agricole Secs. (USA), Inc.*, No. 17-cv-667, 2021 WL 1063183, 2021 U.S. Dist. LEXIS 52329, at *21-*22 (S.D.N.Y. Mar. 19, 2021) (noting that criticism of plaintiff in disability-related terms is factor to consider in judging discriminatory intent); *Schneider v. Wal-Mart Stores, Inc.*, No. 16-cv-2010, 2019 WL 294309, 2019 U.S. Dist. LEXIS 10903, at *11 (S.D.N.Y. Jan. 23, 2019) (noting that evidence leading to inference of discrimination may include discriminatory comments).  Plaintiff alleges that Dr. Ghatan made two remarks at the time of Plaintiff's suspension and shortly before his termination that demonstrate his discriminatory motivation.

Defendant's characterization of Dr. Ghatan's discriminatory comments as mere "stray remarks" is off the mark. In determining whether a remark is stray or probative, the following

factors are considered: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). Considering these factors, it is preposterous to suggest that Plaintiff's allegations are nothing more than stray remarks.

In the meeting to discuss Plaintiff's suspension, which ultimately led to Plaintiff's termination shortly thereafter, Dr. Ghatan said to Plaintiff, in the hallway, "I thought you were bringing your service dog" and then started laughing.  (Pl. Dep. 193:2-7).  As even Plaintiff recognized the context of this comment is significant.  "[I]t was said at a time when he was basically - - I'm telling you I can't work or about to be fired."  (Pl. Dep. 193:17-21).  Moreover, during the meeting, Dr. Ghatan mocked Plaintiff's disability by disparaging Plaintiff's ability to communicate effectively.  (Pl. Dep. 194:23-195:7).  Thus, there are two remarks (1) made by the decision-maker (Dr. Ghatan signed Plaintiff's termination letter), (2) at the time of placing Plaintiff on suspension and less than one month prior to termination, (3) clearly referring to and mocking Plaintiff's speech impediment and need for a service animal and (4) made in the context of suspending Plaintiff.  Accordingly, every consideration weighs against finding these comments "stray remarks."  *See Rose v. N.Y. City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (declining to find "stray remarks" where statements were made by decision-maker directly to plaintiff); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 162-63 (2d Cir. 1998) (declining to find "stray remarks" where statements were made by decision-maker in significant meeting).

Defendant also attempts to contest the final element by arguing that Plaintiff admitted a non-disabled co-worker of his, Sharon Lai ("Lai"), was treated the same as him.  While Defendant is far from correct in its contention that such an admission negates the possibility of discrimination, *see Graham v. Long Island R.R.*, 230 F.3d 34, 43-44 (2d Cir. 2000), it is unnecessary to engage in a discussion of the law because Defendant takes Plaintiff's statement out of context.

Right after Plaintiff asked if he felt anyone else was harassed or bullied at work and he identified Lai, Plaintiff was asked why he identified Lai.  Plaintiff responded that the reason was a singular comment made by Dr. Panov.  (Pl. Dep. 111:17-112:8).  Thus, Plaintiff's "admission" was limited to one harassing comment.  Lai was not suspended, terminated or mocked for having a disability and, as such, nothing presented by Defendant cuts against Plaintiff's *prima facie* case.

### B.  Pretext

Defendant proffers, as its legitimate, non-discriminatory reason, that Plaintiff was terminated for failing to maintain his NCCPA certification and failing to communicate with Defendant regarding his recertification.  Contrary to Defendant's baseless assertions otherwise, there is substantial evidence demonstrating that certification was not a requirement of Plaintiff's position and it was Defendant, not Plaintiff, which failed to remain in contact regarding recertification.

Following Plaintiff's termination, Defendant listed the very same position which Plaintiff held, Physician's Assistant with the Neurosurgery Department for the night shift, as an open position on its website.  In that job listing, Defendant clearly stated, under the Requirements section, "Certification through the completion of national boards **preferred**."  (Ex. D (emphasis added)).[1]  The fact that Defendant claims to have terminated Plaintiff for failing to possess a

---

[1] The quoted portion is somewhat difficult to read but is set forth at the bottom of the page Bates-stamped L. Nowlin 000347.

certification, which by Defendant's own admission *after Plaintiff's termination*, was not an actual requirement for his position is obvious evidence of pretext.  *See Vernon v. Port Auth.*, 154 F. Supp. 2d 844, 858 (S.D.N.Y. 2001) (finding that employer's use of a recommended qualification as an absolute bar in taking adverse action was evidence of pretext); *see also Noel v. Interpublic Group of Co's*, No. 12-cv-2996, 2013 WL 1955879, 2013 U.S. Dist. LEXIS 68067, at *8-*9 (S.D.N.Y. May 13, 2013) (finding omission of requirement used to take adverse action from written job description was evidence of pretext).

Moreover, Plaintiff's certification lapsed in January 2017, more than two years prior to his termination.  (Pl. Dep. 166:13-17).  Despite Plaintiff informing Fiumecaldo, his direct supervisor, in February 2017, Dr. Swarup in March 2107, and Defendant's Credentialing Department in August 2017 about the expiration of his certification, no one raised it as an issue, with Fiumecaldo telling Plaintiff that Defendant could not fire him for his expired certification.  (Pl. Dep. 166:18-169:6).  Defendant's complete nonchalance at this fact, for years, further demonstrates the pretextual nature of Plaintiff's termination.

Defendant attempts to insulate itself from the implications of this evidence by claiming that the Medical Staffing Department was responsible for the decision-making concerning Plaintiff's certification.  However, it was not Medical Staffing that terminated Plaintiff, it was Dr. Ghatan, purportedly motivated by Plaintiff's alleged failure to communicate.  (Ex. Q).  Yet here again, there are significant issues of fact.  According to Plaintiff, Defendant never attempted to contact him.  Rather, it was Plaintiff who made repeated efforts to contact Defendant, only to not receive any return calls.  (Pl. Dep. 198:4-202:6).  Additionally, the only documented communication to Plaintiff submitted by Defendant in support of its motion is an email sent to Plaintiff's work address.  (Ex. R).  As Plaintiff was on suspension at the time, a fact of which

Defendant was obviously aware, and for that matter on FMLA, Plaintiff did not have access to his email.  (Pl. Dep. 107:1-19).  Accordingly, the only evidence pertaining to communications regarding certification is the conflicting testimony of the parties, a clear item for resolution by the jury.

## III.   DISCRIMINATION – HOSTILE WORK ENVIRONMENT

### A.  ADA and NYSHRL

"A hostile work environment requires a showing that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotations omitted).  When determining whether an environment is hostile, some of the factors to consider are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  However, "[i]n a claim of a hostile work environment, the emphasis is on the hostility of the work environment as a whole, not the motivation of one decisionmaker, and liability is determined only by looking at all the circumstances," *Rasmy v. Marriott Int'l Inc.*, 952 F.3d 379, 389 (2d Cir. 2020) (internal quotations omitted), which includes conduct an employee learns of secondhand.  *See Torres v. Pisano*, 116 F.3d 625, 633 (2d Cir. 1997).  Importantly, the Second Circuit has "repeatedly cautioned against setting the bar too high."  *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

Here, Plaintiff was subjected to an environment filled with actions, over a period of years, that suggested he was somehow inferior and incapable because of his speech impediment.  For months, Dr. Swarup repeatedly pressed Plaintiff to find a new job, doing so on a weekly basis.  (Pl. Dep. 44:21-24).  Dr Swarup also told Plaintiff that Dr. Ghatan and Dr. Panov hated him and wanted

to terminate his employment.   (Pl. Dep. 43:12-44:7; 54:16-23).   This fact was additionally confirmed by Nathaniel Rodriguez, who likewise informed Plaintiff that Dr. Ghatan and Dr. Panov hated him, and Sharon Lai, who advised Plaintiff that Dr. Panov said his job was to get rid of Plaintiff.   (Pl. Dep. 50:7-24; 51:20-52:6).   Taken together, these comments placed Plaintiff in serious and prolonged fear of losing his job, a feeling only exacerbated by Defendant's actions.

Defendant falsely blamed Plaintiff for performance issues without conducting any investigation or even speaking with Plaintiff.   (Pl. Dep. 117:17-118:18; 120:3-121:24; 124:4-9; 179:9-181:23).   Moreover, as discussed further below, Defendant placed Plaintiff on a PIP, which explicitly threatened termination.   (Ex. M).   Indeed, Defendant even hired another PA, who Plaintiff was told was brought on as his replacement.   (Pl. Dep. 175:24-176:9; 176:21-177:7).

The harassment and its effect did not cease until Plaintiff's termination, with Dr. Ghatan mocking Plaintiff's speech impediment and need for a service animal at the very meeting where Plaintiff was suspended.   (Pl. Dep. 193:2-25; 194:23-195:7).   Furthermore, throughout the entire period of harassment, nearly two years, many of Plaintiff's co-workers told him that they were sad to see him leave and sorry that he was being forced out, demonstrating that the biased criticism of Plaintiff had spread throughout the department and causing Plaintiff to experience constant humiliation.   (Pl. Dep. 48:8-50:11; 53:9-54:10).   Considering all of these facts as a whole, it cannot be said, as a matter of law, that Plaintiff's work environment was not altered for the worse.   *See Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).

Defendant additionally posits that the hostile actions taken towards Plaintiff were not caused by his disability.   "[T]he question of whether considerations of the plaintiff's [protected characteristic] caused the conduct at issue often requires an assessment of the individuals' motivations and state of mind and an invidious discriminatory purpose may often be inferred from the totality of the relevant

facts." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010) (internal quotations omitted). "Issues of causation, intent, and motivation are questions of fact," *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012), and as such, even "summary judgment should be used sparingly." *Kaytor*, 609 F.3d at 548 (internal quotations omitted). "So long as there is some evidentiary basis for inferring that facially [neutral] incidents were motivated by the plaintiff's [protected characteristic], the ultimate question of whether such abuse was because of the plaintiff's [protected characteristic], is a question of fact for the factfinder." *Id.*

Plaintiff was repeatedly harassed by Drs. Ghatan and Swarup because of his purported inability to communicate. (Pl. Dep. 39:20-41:21; 44:21-24; 179:9-181:23; 193:2-25; 194:23-195:7). Dr. Swarup further informed Plaintiff that Drs. Ghatan and Panov wanted to fire Plaintiff because of his manner of speaking. (Pl. Dep. 43:12-44:10; 54:16-23). Indeed, Dr. Swarup explicitly told Plaintiff that the harassment he was facing was because of his speech impediment. (Pl. Dep. 68:18-25). Clearly, then, there can be little doubt that Defendant's actions were motivated by Plaintiff's disability, especially when considering the fact-intensive nature of determinations of intent.

### B. NYCHRL

Plaintiff's claims under the NYCHRL are subject to significantly different standard. "To prevail on liability, the plaintiff need only show differential treatment – that [he] is treated 'less well' -- because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). It is then Defendant's burden to "prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Id.* at 111 (internal quotations omitted). Thus, a court can only grant summary judgment on a NYCHRL claim if it determines that it is a "truly insubstantial case." *Hernandez v. Kaisman*, 103 A.D.3d 106, 114 (1st Dep't 2012).

As discussed above in reference to the ADA and NYSHRL, viewed the light most favorable

17

to Plaintiff, Defendant's hostile actions were caused by Plaintiff's disability and, accordingly, meet the causation element of Plaintiff's NYCHRL claim.

For the same reasons set forth above, Plaintiff's disability-based hostile work environment claim meets the lower "less well" standard of the NYCHRL.  Assuming, for the sake of argument, that it does not satisfy the "severe or pervasive" test, Plaintiff was still undoubtedly treated less well in a manner that amounted to more than petty slights or trivial inconveniences.  *See Clarke v. N.Y. City Dep't of Educ.*, No. 18-cv-1850, 2020 WL 6047426, 2020 U.S. Dist. LEXIS 189482, at *28-*29 (E.D.N.Y. Oct. 13, 2020) (denying summary judgment where supervisor remarked on plaintiff's ability to work with condition and subjected her to increased scrutiny); *Baez v. Anne Fontaine USA, Inc.*, 2017 WL 57858, 2017 U.S. Dist. LEXIS 1630, at *14-*15 (S.D.N.Y. Jan. 5, 2017) (denying summary judgment where co-workers spread a single rumor about plaintiff).  Thus, at the very least, Plaintiff's NYCHRL claim should proceed to trial.

## IV.   RETALIATION

Retaliation claims are analyzed under the same *McDonnell Douglas* approach as discrimination claims.  Plaintiff first sets forth a *prima facie* case of "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (internal quotations omitted).  Defendant must then proffer a legitimate non-retaliatory reason for the adverse action before the burden shifts back to Plaintiff to show that the proffered reason is pretext for retaliation.  *See Graziadio v. Culinary Inst. of America*, 817 F.3d 415, 429 (2d Cir. 2016).  Plaintiff can demonstrate this by showing

"weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reason for its action." *Kwan*, 737 F.3d at 846.

As with Plaintiff's discrimination claims, retaliation claims are more permissive under the NYCHRL.  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that [he] took and action opposing [his] employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112.  Moreover, Plaintiff need only show that retaliation was "a partial motivating factor" in the adverse action. *Forrester v. Corizon Health, Inc.*, 752 Fed. Appx. 64, 66 (2d Cir. 2018) (Summary Order).

Plaintiff alleges two claims of retaliation.  One, exclusively under the NYCHRL, for Defendant's issuance of a PIP and the second, under federal, state and city law, for Defendant's termination of his employment.

### A.  PIP

Plaintiff decidedly satisfies his *prima facie* case on his first retaliation claim.  Plaintiff made multiple complaints of discrimination, of which Defendant was indisputably aware, and Defendant placed him on a PIP, an adverse action under the NYCHRL, *see Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015), roughly one month after his first complaint. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106, 110 (2d Cir. 2010) (finding temporal gap of four months between complaint and adverse action sufficient, by itself, to raise inference of retaliation).

Recognizing the ease with which Plaintiff meets the *prima facie* case, Defendant only challenges the question of pretext.  Defendant claims that the PIP was not retaliatory because it was based on Plaintiff's 2017 performance appraisal.  However, the actual genesis of the PIP demonstrates that it was created because of Plaintiff's complaint.

In late October 2017, Plaintiff's supervisor, Fiumecaldo, completed Plaintiff's performance appraisal and it was presented to Plaintiff in early November 2017. (Ex. I). While the performance appraisal marked a few categories as needs improvement, Defendant took no action to issue Plaintiff a PIP at that time and Plaintiff, overall, was rated a "Strong Contributor." (*Id.*).

Five *months* later, in April 2018, Plaintiff made his first complaint to McNicholas. (Pl. Dep. 57:2-17; Ex. E). Following Plaintiff's complaint, by her own admission, McNicholas, who was supposed to be investigating Plaintiff's complaints, began instead to look into Plaintiff's performance. (McNicholas Dep. 116:6-17; 184:5-185:6). McNicholas, who does not work in the Neurosurgery Department where Plaintiff worked, and whose job does not involve issuing PIPs, then explicitly **_directed_** Plaintiff's management team to place Plaintiff on a PIP. (McNicholas Dep. 17:17-18:17; 181:7-11). Indeed, none of this is in dispute and is, in fact, confirmed by McNicholas in an email shortly after the issuance of the PIP. (Ex. J). Thus, Plaintiff was quite clearly given a PIP because of his complaint and, if not for his complaint, Plaintiff would never have received a PIP, as he had not for months.

Defendant makes a last-ditch effort to obscure the clarity of its retaliatory motive by pointing to the fact that Plaintiff successfully completed the PIP. This misses the point. The PIP itself is the adverse act and, therefore, once issued the retaliation was complete. The mere fact that Plaintiff was able to avoid further retaliation, at that time, by his stellar performance does not somehow negate the retaliatory impact already felt.

### B. Termination

Turning to the termination claim, Defendant first challenges the inference element of the *prima facie* case, arguing that Plaintiff's termination is too remote in time to his complaints. However, it is well-established that where less significant retaliatory actions take place between

the protected activity and the ultimate adverse action, the length of time form which the inference can be drawn is extended.  *See Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001).

Here, after the completion of his PIP, which as discussed above, is itself an act of retaliation, Plaintiff was advised by Nathaniel Rodriguez, a member of Defendant's administrative staff, that Defendant had hired a person by the name of Fabiola to replace him.  (Pl. Dep. 175:24-176:9).  Once Fabiola began working, she confirmed that she was hired as Plaintiff's replacement.  (Pl. Dep. 176:21-177:7).  Thereafter, Dr. Ghatan humiliated Plaintiff in front of the entire department by blaming Plaintiff for a supposed incident with a patient and attacked Plaintiff's disability in the process.  (Pl. Dep. 179:9-181:23).

Then, in June 2019, Plaintiff's department was provided with an opportunity to further retaliate against Plaintiff when it was notified by Medical Staff Services of a fact which it had known for more than two years, Plaintiff's expired certification.  *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding temporal causation extended where defendant waited until opportune time to retaliate).  This previously innocuous fact was then used to justify Plaintiff's suspension and eventual termination, as described above.  Combined Defendant's minor retaliatory acts and the manifestation of an opportunity to act, allows one to draw the inference of retaliation.  *See Geras v. Hempstead Union Free Sch. Dist.*, 149 F. Supp. 3d 300, 331-33 (E.D.N.Y. 2015) (using context of opportune timing and other retaliatory acts to infer causation).

Lastly, Defendant argues that it had a legitimate, non-retaliatory, purpose in terminating Plaintiff, employing the exact same argument used in reference to the discrimination claims.  While Plaintiff also respectfully refers the Court to Plaintiff's argument on that point (that Defendant's posted Plaintiff's vacant job noting the certification was *preferred,* not required), an

21

additional fact bears emphasis.  Plaintiff worked with an expired certification for years without issue as this certification is not required by New York State to practice as a Physician's Assistant.  (Pl. Dep. 166:13-17).  Likewise, Plaintiff's department was aware of that fact for years.  (Pl. Dep. 166:18-169:6).  It was only after Plaintiff's complaints that his certification became an issue which Defendant purportedly employed to terminate him.

## <u>CONCLUSION</u>

Wherefore, for the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment.

Dated: Garden City, New York
       August 9, 2021

<div style="margin-left:40%">

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By:      _____/s/_____
         Joshua Friedman, Esq.
         Joseph Myers, Esq.
         *Attorneys for Plaintiff*
         585 Stewart Avenue, Suite 410
         Garden City, New York 11530
         (212) 248-7431
         jfriedman@tgplaws.com
         jmyers@tpglaws.com

</div>