UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS NOWLIN,

                      Plaintiff,

      - against -

MOUNT SINAI HEALTH SYSTEM,

                    Defendant.

20 Civ. 2470 (JPC)

### REPLY MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

AKERMAN LLP
Rory J. McEvoy
Brittany A. Buccellato
Attorneys for Defendant
1251 Avenue of the Americas
37th Floor
New York, New York 10020
212.880.3800
rory.mcevoy@akerman.com
brittany.buccellato@akerman.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………… 1

ARGUMENT………………………………………………………………………….......2

POINT I          PLAINTIFF CANNOT ESTABLISH A FAILURE TO
                 ACCOMMODATE CLAIM.…………………………….…………........2

POINT II         PLAINTIFF CANNOT ESTABLISH A DISABILITY
                 DISCRIMINATION CLAIM.…….…………………………………...4

POINT III        PLAINTIFF CANNOT ESTABLISH A HOSTILE
                 WORK ENVIRONMENT CLAIM…………….………………………...7

POINT IV         PLAINTIFF CANNOT ESTABLISH A
                 RETALIATION CLAIM …....………………………………………..8

CONCLUSION …………………………………………………………………………10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs., Inc.,*
    No. 06-CV-2142, 2007 WL 4302514 (S.D.N.Y. Dec. 7, 2007)…….………………………….3

*C.H. v. Goshen Cent. Sch. Dist.,*
    No. 11-CV-6933, 2013 WL 1285387 (S.D.N.Y. Mar. 28, 2013) ……….……………………4

*Baez v. Anne Fontaine USA, Inc.,*
    No. 12-CV-6621, 2017 WL 57858 (S.D.N.Y. Jan. 5, 2017)………………………………...7

*Clarke v. N.Y.C. Dep't of Educ.,*
    No. 18-CV-1850, 2020 WL 6047426 (E.D.N.Y. Oct. 13, 2020)………………………………7

*Espinal v. Goord,*
    558 F.3d 119 (2d Cir. 2009)……………………………………………………………..10

*Geras v. Hempstead Union Free Sch. Dist.,*
    149 F. Supp.3d 300 (E.D.N.Y. 2015)……………………………………………………10

*Kirsch v. Fleet St., Ltd.,*
    148 F.3d 149 (2d Cir. 1998)……………………………………………………………5

*Konteye v. N.Y.C. Dep't of. Educ.,*
    No. 17-CV-2876, 2019 WL 4418647 (S.D.N.Y. Apr. 10, 2019)………………………………8

*Lott v. Coreone Techs., LLC,*
    No. 14-CV-5848, 2016 WL 462486 (S.D.N.Y. Feb. 2, 2016)………………………………9

*Noel v. Interpublic Grp. of Co's Inc.,*
    No. 12-CV-2996, 2013 WL 1955879 (S.D.N.Y. May 13, 2013)………………………………6

*Rose v. N.Y.C. Bd. of Educ.,*
    257 F.3d 156 (2d Cir. 2001)……………………………………………………………5

*Vernon v. Port Auth. of N.Y. & N.J.,*
    154 F.Supp.2d 844 (S.D.N.Y. 2001)……………………………………………………...6

**Rules**

S.D.N.Y. Local Rule 56.1……………………………………………………………3

## PRELIMINARY STATEMENT

In his opposing papers, Plaintiff Louis Nowlin ("Plaintiff" or "Nowlin") attempts to create an issue of fact based on nothing more than his own self-serving testimony, which is contradicted by the testimony of no fewer than 15 witnesses and the documentary evidence. As a matter of law, Plaintiff cannot avoid summary judgment on his claims based on his conclusory allegations when no reasonable juror could find that his version of events took place in light of the overwhelming evidence submitted by Mount Sinai West ("MSW") refuting his assertions.

The only argument that Nowlin presents in support of his claim that his accommodation request was reasonable is that his request formalized what he had already been doing (communicating verbally during emergencies and in written format otherwise). He ignores his detailed written request, which states that he would only communicate verbally when the questions asked by the physicians were limited in nature. In any event, this issue is a red herring because he was permitted to communicate via text when it did not impact patient care even after his request was denied (which he admits). Nowlin's arguments that a transfer was not a reasonable accommodation fail because: (i) the salaries for the transfer positions would not have resulted in a significant, if any, pay decrease; (ii) the transfer positions were the same (or higher) level as the position he held; and (iii) Nowlin refused to engage in the interactive process.

Recognizing that nearly all of the alleged discriminatory comments are neutral or stray remarks, Nowlin now bases his disability claim entirely on 2 alleged remarks made by Dr. Saadi Ghatan ("Ghatan"). He fails to rebut MSW's arguments that these remarks were either neutral or innocuous and were not made in connection with any employment decision and, thus, do not provide evidence of discrimination. Nowlin unsuccessfully attempts to backtrack his admission that an employee outside of his protected class was treated the same as him. His attacks on MSW's legitimate, non-discriminatory reason for his termination fare no better because, among

other things, the evidence shows (and Nowlin admits) that all Physician Assistants ("PAs") in the Department of Neurosurgery ("Neurosurgery") are certified and that Nowlin failed to contact MSW until over 2 weeks after he was supposed to take the exam to get recertified.   With regard to his hostile work environment claim, Plaintiff fails to point to any authority that criticism amounts to more than petty slights or to any admissible evidence that the alleged treatment occurred because of his alleged disability.

Nowlin's arguments that the Performance Improvement Plan ("PIP") was retaliatory under city law fail because, contrary to his assertions: (i) his overall score on the 2017 Performance Appraisal (on which the PIP was based) merely shows that he just barely met expectations despite receiving "needs improvement" in several individual areas and (ii) there is no evidence that the PIP was devised by the Director of Labor Relations in order to retaliate against him for complaining about Neurosurgery.   Finally, lacking any evidence of retaliation in connection with his termination, he unsuccessfully attempts to create temporal proximity between his August 2018 complaint and his July 2019 termination where there is none.

## ARGUMENT

### POINT I

### PLAINTIFF CANNOT ESTABLISH A FAILURE TO ACCOMMODATE CLAIM

MSW showed that Nowlin's failure to accommodate claim fails because: (i) his proposed accommodation was unreasonable and would impose an undue burden due to its dangerous impact on patient care; (ii) after his request was denied, Nowlin was permitted to communicate by text when it did not impact patient care; and (iii) MSW offered him a reasonable accommodation of a transfer to a different PA position, which he refused.  (Main Br. 13–15).

 In opposition, Nowlin claims that his request was reasonable because it was similar to what he had been doing prior to his request.  (Pl. Br. 7–8).  He testified that, prior to his request,

he would communicate with physicians via phone in urgent situations.  (Pl. Tr. 25).  His detailed

written accommodation request does not contemplate having verbal conversations with the

physicians during emergencies, rather, it would permit follow-up questions "verbally (if they

require limited responses) or through the written format for longer replies."  (Pl. Tr. 94–95, Ex.

13).  Contrary to Nowlin's assertions, Ghatan did not admit that there was no issue with him

communicating primarily by text.  In fact, the cited portion of his testimony describes the serious

patient care issues with communicating primarily via messaging.  (Pl. Br. 8; Ghat. Tr. 36–38).

Nowlin also argues that his request was given no more than two minutes of consideration

at a meeting, during which he was not permitted to explain it.  (Pl. Br. 8).  He ignores the fact

that the month before the meeting, he submitted a step-by-step description of his request, which

was evaluated by an inter-disciplinary group that included the Chief Medical Officer for MSW

and the Legal Department (a fact which he does not dispute).  (Main Br. 6–7; Pl. Tr. 94–95, Ex.

13; Pl. 56.1 Stmt. ¶46).  Nowlin concedes that after his request was denied, he was permitted to

communicate by text when it did not negatively impact patient care.  Pl. 56.1 Stmt. ¶97.[1]

He argues that a transfer was not a reasonable accommodation because: (i) there is no

evidence regarding the pay at the time he sought an accommodation; (ii) the transfer positions

were "junior" positions; and (iii) a transfer would not have accommodated him because MSW

asked Nowlin to first identify positions in which he would be interested so that it could

determine whether that department could accommodate him.  (Pl. Br. 9–10).  The first 2

arguments are refuted by the record because: (i) the pay for 4 of the 5 transfer positions was the

---

[1] Although Plaintiff disputed this statement in his 56.1 Statement, he failed to cite to any evidence and, as a result, this statement is deemed admitted.  *See, e.g.,* S.D.N.Y. Local Rule 56.1 ("each statement…must be followed by citation to evidence which would be admissible."); *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs., Inc.,* No. 06-CV-2142, 2007 WL 4302514, at *4–5 (S.D.N.Y. Dec. 7, 2007) ("Defendants' unsupported denials [to Plaintiff's 56.1 Statement], without more, cannot create disputes of material fact.").

same as or more than his position at the time he sought an accommodation in 2018 and the fifth

position would not have resulted in a significant pay decrease; (ii) there are no junior PA

positions; and (iii) the transfer positions were the same or a higher level PA position than the one

he had.  (Main Br. 15; Her. Reply Decl. ¶3; Pl. Tr. 106, Ex 16; Diaz Decl. ¶3).  As to Plaintiff's

final argument, Nowlin cut off the interactive process when he told Ann McNicholas

("McNicholas") that he was not interested in transferring.  (Main Br. 8).  It would have been

nonsensical for McNicholas to reach out to every department with a vacancy and determine

whether they would accommodate him without knowing if he was interested in that position.

**POINT II**

**PLAINTIFF CANNOT ESTABLISH A DISABILITY DISCRIMINATION CLAIM**

MSW demonstrated that Nowlin's disability claim has no merit because: (i) the alleged

comments are neutral, or at most, stray remarks; (ii) Nowlin admits that an employee outside of

his protected class was treated the same as him; and (iii) he was terminated for the legitimate,

non-discriminatory reason that he failed to take any steps to renew his certification, after having

agreed to take the exam and despite being told that it was required for his position, and failed to

communicate with Neurosurgery regarding the exam.  (Main Br. 15–21).

Nowlin relies solely on 2 alleged comments made by Ghatan, specifically: (i) asking him

about his dog and (ii) using the phrase "being able to communicate effectively."[2]   (Pl. Br. 11–

12).  He ignores MSW's showing that Ghatan was genuinely asking Plaintiff where his dog was

because he wanted to see it.  (Main Br. 18–19).  Moreover, his alleged use of a service dog is

irrelevant because there is no evidence that his use of the dog is connected to his cluttering.

---

[2] Nowlin fails to address MSW's arguments that the alleged remarks by Dr. Rupendra Swarup ("Swarup"), Nathanial Rodriguez ("Rodriguez"), and Dr. Fedor Panov ("Panov") are neutral remarks and therefore, concedes that they are not evidence of disability discrimination.  (Main Br. 16–17).  *See, e.g., C.H. v. Goshen Cent. Sch. Dist.*, No. 11-CV-6933, 2013 WL 1285387, at *13 (S.D.N.Y. Mar. 28, 2013) (issues not addressed in plaintiff's brief as abandoned).

4

Plaintiff's attempt to cast the neutral phrase "communicating effectively" as "mocking Plaintiff's speech impediment" is baseless. This phrase applies equally to individuals without disabilities and does not provide evidence of discrimination (especially here where there is ample evidence about MSW's issues with the content of Nowlin's communications). *Id.* The cases cited by Nowlin do not support his argument that these comments are not stray remarks because in those cases, a discriminatory remark was made directly in reference to a threat to terminate plaintiff. *See Rose v. N.Y.C. Bd. of Educ.,* 257 F.3d 156, 158, 162 (2d Cir. 2001) (plaintiff's supervisor stated that he would replace her with someone "younger and cheaper" on more than one occasion); *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 163 (2d Cir. 1998) (supervisor threatened plaintiff by saying, "You better watch your ass. If you look around, you see all young people.").

Plaintiff attempts to avoid his admission that an employee outside of his protected class was treated the same as him by arguing it was only with respect to the "weakest link" comment. (Pl. Br. 13). When asked at his deposition, "Did you feel that any of your colleagues were also being harassed or bullied at work?" he responded unequivocally, "Sharon Lai. Yes, I did." (Pl. Tr. 111). Providing further proof of the fact that he believed that the perceived harassment was not limited to (i) him or to employees with speech disorders or (ii) the "weakest link" comment, is an email from Nowlin on July 4, 2018, in which he wrote, "Transferring to another department will not solve the problems of harassment and bullying within the department, but only allow one of my remaining colleagues to be the unfortunate next victim." (Pl. Tr. 109, Ex. 17).

In response to MSW's showing that he was terminated for a legitimate, non-discriminatory reason, Plaintiff argues that certification was not required based on a job posting stating that it was preferred.[3] (Pl. Br. 13–14). He fails to respond to the evidence establishing

---

[3] His argument that Frank Fiumecaldo ("Fiumecaldo") told him he could not get fired for an expired certification is refuted by the evidence. (Pl. Br. 14). Fiumecaldo told him that he had to take the exam to get [con't on next page]

5

that: (i) all Neurosurgery PAs are certified; (ii) certification is required to be appointed as a PA in the Mount Sinai Health System (the "MSHS"); and (iii) all MSHS PAs are required to maintain certification throughout their employment.  (Sch. Decl. ¶3; Fl. Decl. ¶¶3–5, Ex. 1; Isola Decl. ¶3).  Nowlin ignores his admissions that he does not know of any other PAs at MSW who were not actively certified and that he knew he had to get recertified eventually.  (Pl. Tr. 168; Pl. 56.1 Stmt. ¶119).  In the face of this evidence that a PA cannot work at MSW without being certified, the fact that the job posting incorrectly stated that certification was preferred, not required, at the time the applicant applied for the position does not provide evidence of pretext.

*Vernon v. Port Auth. Of N.Y. & N.J.,* 154 F.Supp.2d 844 (S.D.N.Y. 2001) and *Noel v. Interpublic Grp. Of Co's Inc.,* No. 12-CV-2996, 2013 WL 1955879 (S.D.N.Y. May 13, 2013) do not support Plaintiff's argument that the job posting provides evidence of pretext.  In *Vernon,* the Court found that plaintiff showed that the reason for not promoting him was pretextual because: (i) 3 months after plaintiff complained, his manager recommended a policy that precluded plaintiff's promotion by recommending (not requiring) that positions at a certain level have a license and (ii) plaintiff was able to name 2 individuals at a higher level than him who did not hold a license.  *Vernon,* 154 F.Supp.2d at 858.  In *Noel,* the Court found the omission of board experience from a list of job requirements provided support that this reason for not promoting plaintiff was pretexual because this requirement only became a deciding factor after plaintiff was denied the position.  *Noel,* 2013 WL 1955879, at *3.

---

recertified, but would not be immediately be fired.  (Fiume. Decl. ¶3).   His assertion that Credentialing did not raise his certification as an issue fares no better because: (i) his own testimony does not support this statement and (ii) it is clear from the evidence that active certification is required to be credentialed at the MSHS.  (Pl. Br. 14; Pl. Tr. 166–68; Fl. Decl. ¶¶3–4).  Nowlin's claim that Ghatan alone made the decision to terminate him is refuted by the evidence showing that: (i) Medical Staff Services ("Med Staff") told Neurosurgery that maintaining certification is a medical staff appointment requirement and to remove Nowlin from all clinical activity immediately and (ii) Heather Isola consulted with Labor Relations regarding terminating Nowlin.  (Pl. Br. 14; Main Br. 10–12).

Nowlin also makes the nonsensical argument that it was MSW's responsibility to stay in contact with him regarding his certification.  (Pl. Br. 14).  His claim that he attempted to contact MSW, but it never contacted him is belied by the documents and testimony of 4 witnesses. (Main Br. 11–12).[4]  Even by Nowlin's account, when he spoke with Adrienne Barahona on July 10 (over 2 weeks after he was supposed to take the exam), it was not contact made on his own initiative, but "[t]hat's when they called and [he] called them back."  (Pl. Tr. 207).[5]

## POINT III

## PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM

MSW showed that Plaintiff's hostile work environment claim fails because: (i) the alleged treatment is insufficient to create a hostile work environment and (ii) there is no evidence that the alleged treatment occurred because of his disability.  (Main Br. 21–23).

Nowlin argues that the alleged unfair criticism of his job performance constitutes a hostile environment.  (Pl. Br. 16).  He fails to address the ample authority provided by MSW that the alleged conduct fails to amount to such under federal, state, or city law nor does he cite to any authority in support of his federal or state claims.  (Main Br. 22).  The 2 cases relied on by Nowlin in support of his city law claim are inapposite because they involve explicit disparaging comments or actions about plaintiffs' protected characteristics.  *See Clarke v. N.Y.C. Dep't of Educ.,* No. 18-CV-1850, 2020 WL 6047426, at *9 (E.D.N.Y. Oct. 13, 2020); *Baez v. Anne Fontaine USA, Inc.,* No. 12-CV-6621, 2017 WL 57858, at *1, 5 (S.D.N.Y. Jan. 5, 2017).

He claims that there is evidence that he was harassed because of his cluttering based on Swarup saying that Ghatan and Panov wanted to fire him because of his speech.  (Pl. Br. 17).

---

[4] Although Nowlin produced phone records showing a call between him and MSW on July 10, 2019, he produced no records showing that he attempted to call MSW prior to that date (because he did not).  (Pl. Tr. 208–09, Ex. 39).

[5] Nowlin was told to remain in contact with MSW while on leave.  (Main Br. 11–12).  Thus, his argument that he was somehow excused from checking his work email because he was on leave does not hold water.  (Pl. Br. 14–15).

These allegations are refuted by the testimony of Swarup, Ghatan, and Panov.  (Main Br. 17).

Moreover, Plaintiff's testimony alleges only that Swarup made references to his "speech", not to

his cluttering.  (Main Br. 18).  In any event, these alleged statements are inadmissible hearsay.

*See, e.g. Konteye v N.Y.C. Dep't of Educ.,* No. 17-CV-2876, 2019 WL 4418647, at \*15, 20

(S.D.N.Y. Apr. 10, 2019) (plaintiff's statement that he "was told by one of [his] former

colleagues that [a school principal told another principal] not to hire [him]" was "a textbook

example of hearsay, not admissible in the context of a motion for summary judgment.").

## POINT IV

## <u>PLAINTIFF CANNOT ESTABLISH A RETALIATION CLAIM</u>

MSW demonstrated that Nowlin cannot establish a retaliation claim because: (i) he was

placed on the PIP for a legitimate, non-retaliatory reason[6] and (ii) his termination was too remote

in time from his complaints to permit an inference of retaliation and, in any event, he was

terminated for the legitimate, non-retaliatory reason discussed above.  (Main Br. 23–25).

Nowlin argues that the PIP was retaliatory because: (i) although he was graded as "needs

improvement" in several areas on his 2017 Appraisal, his overall rating was "Strong Contributor"

and (ii) McNicholas told Neurosurgery to issue Nowlin a PIP after his complaint.  (Pl. Br. 20).

He admits that he received "needs improvement" in several areas on his 2017 Appraisal,

which was issued before he complained.  (Pl. Br. 20).  The "2"/"Strong Contributor" overall

rating (the available ratings range from 1 to 3) is nothing more than the intersection of the scores

he received in the individual areas.  (Pl. Tr. 37, Ex 9).  He received a 1.64 in Performance and

1.97 in Professionalism, which according to the metrics of the appraisal system, was rounded up

to "2"/"Strong Contributor."  *Id.*  Contrary to Plaintiff's allegations, this does not suggest that he

---

[6] Nowlin concedes that a PIP cannot form the basis of a retaliation claim under federal or state law.  (Pl. Br. 19).

exceeded expectations, but rather that he barely met expectations and needed improvement in several areas.  (McNich. Tr. 14–15).  Nowlin's sole allegation of retaliatory intent is that the PIP was orchestrated by McNicholas.  The evidence shows that Neurosurgery wanted to provide additional resources to Plaintiff to help him improve his performance so McNicholas recommended that Neurosurgery provide Nowlin with a PIP that had specific directions and expectations.  (*Id.* at 12–13, 184–85).  Moreover, it is nonsensical that the Director of Labor Relations, whose job it is to investigate complaints, would retaliate against him for complaining.

Nowlin argues that his July 2019 termination was not too remote in time from his early August 2018 complaint because "less significant retaliatory acts" allegedly took place in between, specifically: (i) Rodriguez telling Nowlin that Fabiola Plaza ("Plaza") had been hired to replace him in November 2018 (even though he was not terminated until 8 months later) and (ii) Ghatan "blaming Plaintiff for a supposed incident with a patient and attacked Plaintiff's disability" in April 2019.  (Pl. Br. 20–21; Pl. Tr. 175–176; Compl. ¶50; Plaza Decl. ¶1).  Again, the evidence and common sense do not support this version of events.[7]  Moreover, Nowlin does not allege that Rodriguez retaliated against him.  (Pl. Tr 220–21, Ex. 41, p. 2).  Ghatan's alleged criticism of his performance does not constitute an adverse action.  *See, e.g., Lott v. Coreone Techs., LLC,* No. 14-CV-5848, 2016 WL 462486, at *15 (S.D.N.Y. Feb. 2, 2016) (criticism cannot form the basis of a retaliation claim).  In any event, it allegedly occurred 8 months after his complaint and is too remote in time to permit an inference of retaliation.  *See* Main Br. 25.

Plaintiff also claims that the year between his complaints and his termination should be ignored because MSW waited until the "opportune time" to terminate him for his expired

---

[7] Rodriguez never told Nowlin that Plaza was hired to replace him.  (N. Rod. Decl. ¶3).  Likewise, Plaza: (i) was not hired to replace Nowlin and (ii) did not tell Nowlin that she was hired to be his replacement.  (Plaza Decl. ¶¶2–3). Nowlin testified that Ghatan used him as example in a meeting about empathy and did not testify that Ghatan attacked his disability during the meeting.  (Pl. Tr. 179–81).  Ghatan did not comment negatively on Plaintiff's empathy during a department meeting and in fact, thought one of his strengths was his empathy.  (Main Br. 17).

certification – when Med Staff informed Neurosurgery of the issue.  (Pl. Br. 21).  However, it was Leslie Schlachter who discovered the expired certification, not Med Staff.  (Main Br. 10).  Nowlin's reliance on *Espinal v. Goord,* 558 F.3d 119 (2d Cir. 2009) and *Geras v. Hempstead Union Free Sch. Dist.,* 149 F.Supp.3d 300 (E.D.N.Y. 2015) is misplaced.  In *Espinal,* the officers waited 6 months to retaliate against plaintiff by waiting to beat him up until he got into a fight with another inmate, providing an explanation for his injuries.  *Espinal,* 558 F.3d at 129.  In *Geras,* the Board attempted unsuccessfully to retaliate against plaintiff one month after he engaged in protected activity and was successful 5 months later at the regularly scheduled Board meeting at which his recommendation for tenure was presented for a vote.  *Geras,* 149 F.Supp.3d at 332.  There was no such "opportune time" here.

Nowlin claims that there is evidence of retaliatory intent because Neurosurgery knew for years about his expired certification.  (Pl. Br. 21–22).  The only evidence that anyone in Neurosurgery knew that his certification expired prior to June 2019 was that Fiumecaldo learned that it had expired, but assumed that he took the test as he said he would and got recertified.  (Fiume. Decl. ¶¶2–4).  The record establishes that the individuals involved in the suspension and termination did not learn about the expired certification until June 2019.  (Main Br. 10–12).

## CONCLUSION

For all the foregoing reasons, as well as those set forth in its moving brief, Defendant's motion for summary judgment should be granted and the Complaint should be dismissed in its entirety with prejudice.

Date:  New York, New York                                    AKERMAN LLP
      August 16, 2021                                        /s/ Rory J. McEvoy
                                                 Rory J. McEvoy
                                                 Brittany A. Buccellato